**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-21165**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**CARLOS ALBERTO LOPEZ-MURCIA, also known as**
**CARLOS LOPEZ,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CR-124)
_____

January 2, 1997

Before DAVIS, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

      Appellant Carlos Alberto Lopez-Murcia pled guilty to possession of heroin with intent to distribute. At his sentencing hearing, Lopez-Murcia sought a downward departure under U.S.S.G. § 5K2.12 based upon coercion and duress. The

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

district court denied Lopez-Murcia's request for a downward departure, sentencing him to fifty-seven months imprisonment. Appellant argues that the district court erred in denying his request for a downward departure because it employed an objective rather a subjective standard in evaluating appellant's claims of coercion and duress. We affirm.

## I. FACTUAL BACKGROUND

Lopez-Murcia is a citizen of Colombia, and he was a resident of that country until his arrest in the United States. At his re-arraignment, Lopez-Murcia told the district court that while living in Colombia, he entered into a business venture to sell jewelry. During the course of this enterprise, jewelry valued at approximately $25,000 was allegedly stolen from him. Lopez-Murcia's business "partner," Victor Moreno, threatened to murder Lopez-Murcia, his wife, or his daughter if he did not pay back the value of the jewelry. Shortly thereafter, Lopez-Murcia was approached by individuals who offered to pay him to transport drugs into the United States. Lopez-Murcia stated that he believed the only way to ensure the physical safety of his family was to transport drugs in order to pay off his debt to Moreno.

From October 1995 to June 13, 1996 (the day he was arrested), Lopez-Murcia allegedly made six trips to the United States. The first two trips were "dry runs." On the last

2

trip, he was arrested by agents of the Drug Enforcement Agency.

At Lopez-Murcia's sentencing hearing, the district court accepted as true all of Lopez-Murcia's statements about the threats, coercion, and duress. Lopez-Murcia urged the court to determine if he was acting under coercion and duress from his subjective point of view. The district court denied Lopez-Murcia's request for a downward departure, concluding that it was unreasonable for Lopez-Murcia to continue to traffic drugs for six trips during a period of nine months without devising some scheme to extricate himself and his family from the perceived threat.

## II. ANALYSIS

We have jurisdiction to review a district court's refusal to depart downward from the guidelines only if the refusal is a violation of the law. *See United States v. Lugman*, 1997 WL 730763, at *2 (5th Cir. Nov. 25, 1997); *United States v. Palmer*, 122 F.3d 215, 222 (5th Cir. 1997). A refusal to depart violates the law only if the district court refuses to grant a downward departure under the mistaken assumption that it does not have the authority to do so. *See id.* We have no jurisdiction if the district court's refusal to depart is based upon its factual determination that a downward departure is unwarranted. *See id.*

Section 5K2.12 of the sentencing guidelines states that the district court "may" depart downward from the applicable guideline range "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. § 5K2.12. "The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be." *Id.* Although this circuit has yet to address the issue of the standard to be applied in evaluating a claim under U.S.S.G. § 5K2.12, other circuits have held that the district court should consider the subjective mental state of the defendant. *See, e.g.*, *United States v. Henderson-Durand*, 985 F.2d 970, 976 (8th Cir. 1993); *United States v. Johnson*, 956 F.2d 894, 898 (9th Cir. 1992); *see also United States v. Willis*, 38 F.3d 170, 175-76 (5th Cir. 1994) (discussing this issue in dicta). We review a district court's legal interpretation of the guidelines de novo. *See United States v. Adams*, 996 F.2d 75, 78 (5th Cir. 1993).

Assuming, without deciding, that subjective considerations should be taken into account in determining whether to grant a downward departure under § 5K2.12, we note that the district court accepted as true Lopez-Murcia's

4

version of events leading to his arrest. That is, the district court understood the threats, coercion, and duress upon which Lopez-Murcia based his § 5K2.12 claim to be real. Nonetheless, the district court found that the causal connection between Lopez-Murcia's offense and the coercive influence he described was too attenuated to grant a downward departure. The district court believed that Lopez-Murcia should have extricated himself from his situation at some point during the nine month period that he trafficked drugs. We find that the district court considered Lopez-Murcia's situation from his subjective point of view and, even from this favorable viewpoint, concluded that his factual circumstances did not merit a downward departure. Therefore, we need not reach the legal issue of whether a defendant's subjective mental state should be taken into account under § 5K2.12.

Because the district court was not acting under the mistaken assumption that it did not have the authority to grant a downward departure, we lack jurisdiction to review the district court's sentencing decision.

**AFFIRMED.**

5